UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CRAIG H. CYPERT** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 13-5049** |
| | * | |
| **BROUSSARD BROTHERS, INC., ET AL.** | * | **SECTION "L" (4)** |

**ORDER & REASONS**

Before the Court is a Motion for Summary Judgment filed by Commercial Coating Services International, LLC ("CCSI"), (Rec. Doc. 53), and a Cross-Motion for Summary Judgment filed by Plaintiff Craig H. Cypert, (Rec. Doc. 73). The Court has reviewed the briefs and the applicable law and, after hearing oral argument, now issues this Order and Reasons.

**I.     BACKGROUND**

This case arises out of injuries that Plaintiff Craig Cypert allegedly sustained while working as a pipeline coating technician aboard a vessel, the BB-70. (Rec. Doc. 1 at 2-3). Cypert claims that he was injured when he stepped on uneven grating in the "jeeping" area on the barge, causing him to twist his body and hurt his back and legs. (Rec. Doc. 1 at 2-3). Defendant Broussard Brothers, Inc. ("Broussard"), the owner and operator of the BB-70, was selected as a prime contractor for the Kinder Morgan pipeline project, which involved laying pipeline underneath or along the bottom of Lake Pontchartrain. Broussard subcontracted with Defendant CCSI for pipe blasting and coating services on the portion of the pipe running through Lake Pontchartrain. CCSI employed Cypert as a pipeline coating technician to work on the pipeline

1

project on the BB-70 in Lake Pontchartrain. (Rec. Doc. 56 at 2).

Before starting the job with CCSI, Cypert completed an application, underwent a medical examination, was extended a job offer, and filled out paperwork that was labeled "new hire" in CCSI's records. *See* (Rec. Doc. 56 at 2, 7). Cypert began working on the BB-70 on August 1, 2012. (Rec. Doc. 53-4 at 3). While he was working for CCSI on the Lake Pontchartrain job, Cypert worked shifts that consisted of ten days on the barge followed by four days off. (Rec. Doc. 53-7 at 12). He spent all of his working hours on the BB-70 during that time. (Rec. Doc. 53-7 at 13). The job was expected to take about one year to complete. Nearly two months after he started working for CCSI, Cypert was injured. (Rec. Doc. 57-1 at 3).

Cypert had previously worked for CCSI on three projects in 1998 and six projects between 2004 and 2006. *See* (Rec. Doc. 57 at 2). There was a hiatus of approximately six years between Cypert's previous work for CCSI and the Lake Pontchartrain job. *See* (Rec. Doc. 53-4). Cypert's Social Security records indicate that during that six year period he worked for other employers, including TSC Staffing Solutions, Inc., Rockford Corporation, and Laney Directional Drilling Company. (Rec. Doc. 56-2 at 5). He also worked as a self-employed handyman, doing plumbing, electrical, and carpentry work, during that time. (Rec. Doc. 57-1 at 7).

Cypert filed the present lawsuit against CCSI and Broussard Brothers pursuant to the Jones Act and general maritime law. (Rec. Doc. 1 at 1). Cypert claims that his injuries were caused by the vessel's unseaworthy condition as well as Defendants' negligence in failing to properly install the platform/grating and in failing to provide a safe place to work. (Rec. Doc. 1 at 3). CCSI filed an answer in which it denies all liability. CCSI claims that Cypert is not a seaman within the meaning of the Jones Act. After discovery, CCSI and Cypert filed cross-

motions for summary judgment, asking the Court to determine, as a matter of law, whether Cypert is a seaman. (Rec. Docs. 53, 73).

## II. PRESENT MOTION

### A. CCSI's Motion for Summary Judgment (Rec. Doc. 53)

CCSI asks the Court to hold, as a matter of law, that Cypert is not a seaman, and, by extension, dismiss his Jones Act claim for failure to meet the seaman status requirement. (Rec. Doc. 53-1 at 2). CCSI cites the Supreme Court's decision in *Chandris v. Latsis*, which established a test to determine whether a plaintiff is a seaman. (Rec. Doc. 53-1 at 2) (citing *Chandris v. Latsis*, 515 U.S. 366 (1995)). CCSI disputes whether Cypert satisfies the temporal element of that test. (Rec. Doc. 53-1 at 2). CCSI emphasizes the Fifth Circuit's general requirement that a worker spend at least 30% of his employment in service to a vessel. (Rec. Doc. 53-1 at 2) (citing *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 375 (5th Cir. 2001)). CCSI urges the Court to consider Cypert's previous work for the company when calculating the percentage of his employment that he spent working on the BB-70. (Rec. Doc. 53-1 at 6). If the Court includes his previous work for CCSI, then Cypert would have only spent 10.1% of his time on the BB-70. (Rec. Doc. 53-4 at 2).

In support of its position, CCSI cites *Harbor Tug & Barge Co. v. Papai*, wherein the Supreme Court held that prior work history does not affect the seaman inquiry if the employee was injured on a new assignment with the same employer, where the new assignment involved "different essential duties" from those of his previous work. (Rec. Doc. 53-1 at 6) (citing *Papai*, 520 U.S. 548, 559-60 (1997)). Relying on Cypert's deposition testimony, CCSI points out that his duties were always as a pipeline coating technician. (Rec. Doc. 53-1 at 6). CCSI argues that

3

because *Papai* does not exclude Cypert's prior assignments, which involved the same essential duties, these prior assignments should be considered when performing the temporal requirement calculation. (Rec. Doc. 53-1 at 6).

In the alternative, CCSI argues that the Court should deny Cypert's Motion for Summary Judgment and let the jury decide whether Cypert was a seaman. CCSI argues that the jury should be able to consider evidence that is relevant to understanding what Cypert's job was really like as a service technician.

### B. Cypert's Motion for Summary Judgment (Rec. Doc. 57, 73) and Broussard's Opposition (Rec. Docs. 56)

Both Cypert and Broussard filed oppositions to the Motion for Summary Judgment and Cypert filed his own Motion for Summary Judgment. Both parties argue that Cypert was a seaman for the purposes of the Jones Act. Both parties urge the Court to focus only on the Lake Pontchartrain project when performing the seaman status analysis. (Rec. Doc. 57 at 3). The parties direct the Court to the Fifth Circuit's decision in *Patton-Tully Transportation Co. v. Ratliff*, in which the court held that a four-month hiatus in the plaintiff's employment with the defendant was a "significant break requiring separate evaluation of . . . the re-employment period." (Rec Doc. 57 at 3) (citing *Patton-Tully*, 797 F.2d 206, 207 (5th Cir. 1986)). Cypert also cites the Fifth Circuit's decision in *Abram v. Nabors Offshore Corp.*, in which the court held that "only the second employment period was to be considered in evaluating seaman status." (Rec. Doc. 57 at 4) (internal quotation marks omitted) (citing *Abram* 439 Fed. Appx. 347, 348 (5th Cir. 2011)).

## III. LAW & ANALYSIS

4

A.  Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Although determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact and it is usually inappropriate to take the question from the jury, judgment as a matter of law is mandated where the facts and the law will reasonably support only one conclusion." *Becker v. Tidewater, Inc.*, 335 F.3d 376, 386 (5th Cir. 2003) (citing *Papai*, 520 U.S. at 554).

B.  Seaman Status

The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. The Jones Act does not define the term "seaman," therefore, Courts have been left to determine exactly which maritime workers are entitled to the special protections that the Jones Act provides. *See Chandris v. Latsis*, 515 U.S. 347, 354 (1995). The Supreme Court has determined that seaman status requires: (1) that the employee's duties contribute to the function of a vessel in navigation (or identifiable group of vessels) or to the accomplishment of its mission and (2) that the connection be substantial in terms of both its nature and duration. *See Chandris*, 515 U.S. at 368. The parties here do not dispute that Cypert's duties contributed to the function of a vessel in navigation. The parties, however, disagree about the second prong of that test.

The "substantial connection" inquiry includes a temporal element. *Chandris*, 515 U.S. at 371. In *Chadris*, the Supreme Court adopted the Fifth Circuit's "rule of thumb": "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id.* The Court warned, however, that this figure is a "guideline" and that "departure from it will certainly be justified in appropriate cases." *Id.* The Court must still examine the "total circumstances of an individual's employment" to determine "whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Id.* at 369.

In the present case, Cypert worked for CCSI on various jobs at various times in 1998 and again during the time period ranging from 2004 to 2006. (Rec. Doc. 53-4 at 2). For six years, from 2006 to 2012, Cypert did no work for CCSI. During that time, Cypert testified that he worked for various companies and performed some work on land as a self-employed handyman. In July 2012, he applied to work for CCSI. He began work on the Lake Pontchartrain project on August 1, 2012. The question before the Court is what period of time should be examined when determining whether the temporal element required for seaman status has been met: the time spent on the Lake Pontchartrain project or the entire time that he spent working for CCSI.

In *Complaint of Patton-Tully Transp. Co.*, the Fifth Circuit addressed a similar question. 797 F.2d 206 (5th Cir. 1986). In that case, the Plaintiff had worked for a company for several months until he quit the job in May 1980. *See id.* at 209. The Plaintiff returned to work for the same company in September 1980 and worked there until his death, in March 1981. *See id.* The Fifth Circuit explained that because of the four-month gap in his employment, the final six months of his employment was the appropriate "employment term" to examine for the purpose of

6

the Jones Act seaman analysis. *Id.* at 210. The Court stated that "[t]he district court correctly found on the facts of this case that the four-month hiatus in Ratliff's employment was a significant break requiring separate evaluation of his duties during the re-employment period." *Id.* Similarly, in a more recent unpublished opinion, the Fifth Circuit reaffirmed its holding in *Patton-Tully*. In *Abram v. Nabors Offshore Corp.*, the Fifth Circuit affirmed the district court's grant of summary judgment dismissing the plaintiff's Jones Act claim. 439 Fed. Appx. 347 (5th Cir. 2011). The plaintiff in *Abram* worked for the defendant from 1994 until 2002 and then again from 2005 until 2009. *Id.* at 348. The Fifth Circuit explained that the period of time relevant to the Jones Act analysis was from 2005 until 2009. *Id.* The Fifth Circuit cited *Patton-Tully* in support of this conclusion, stating that in *Patton-Tully* "a four-month hiatus in employment was a significant enough break to require a separate evaluation of duties during the re-employment period to determine seaman status at the time of the accident." *Id.* at 348 (citing *Patton-Tully*, 797 F.2d 2206).

Similarly, the Court finds that in the present case the *six-year* hiatus in Cypert's employment with CCSI was a significant enough break to require separate evaluation of his work from August 1, 2012 until September 23, 2012. The August through September period is the relevant "employment term" for the purposes of the Jones Act analysis in this case.

CCSI cites this Court's decision in *Ray v. Coastal Catering, LLC*, for the proposition that the Court should examine the entire employment relationship with the employer. No. 10-4021; 2012 WL 4210295 (E.D. La. Sept. 19, 2012). However, the facts in *Ray* are distinguishable from the present case. In the present case, there was a six year hiatus and Cypert was working on the Lake Pontchartrain project for over a month before he was injured. He had not worked for CCSI

7

for six years prior to his injury.  He worked for other employers during this six year hiatus.  If Cypert were working for another employer doing the exact same thing when he was injured, he would unquestionably be a seaman.  To deny him seaman status now because some six years earlier he worked as a non-seaman for CCSI makes no sense and is inconsistent with the purpose of the Jones Act.

Because the Court finds that the six-year hiatus was a significant enough break to require separate evaluation of duties during the re-employment period, and because Cypert spent the majority of his time working for CCSI onboard the BB-70 vessel, the Court finds that, as a matter of law, Cypert is a Jones Act seaman.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that CCSI's Motion for Summary Judgment, (Rec. Doc. 53), is hereby **DENIED** and Cypert's Motion for Summary Judgment, (Rec. Doc. 73), is hereby **GRANTED**.

New Orleans, Louisiana, this 25th day of August, 2014.

_____
UNITED STATES DISTRICT COURT JUDGE