UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CRAIG H. CYPERT** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **No. 13-5049** |
| | * | |
| **BROUSSARD BROTHERS, INC., ET AL.** | * | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment filed by Defendant Broussard Brothers, Inc. ("Broussard Brothers") for its claim against defendant-in-cross-claim, Commercial Coating Services International, LLC ("CCSI"). (Rec. Doc. 50). The Court has reviewed the briefs and applicable law and now issues this Order & Reasons.

## I. BACKGROUND

This case arises out of injuries that Plaintiff Craig Cypert allegedly sustained while working as a pipeline coating technician aboard a vessel, the BB-70. (Rec. Doc. 1 at 2-3). Cypert claims that he was injured when he stepped on uneven grating in the "jeeping" area on the barge, causing him to twist his body and hurt his back and legs. (Rec. Doc. 1 at 2-3). Broussard Brothers, the owner and operator of the BB-70, was selected as a prime contractor for the Kinder Morgan pipeline project, which involved laying pipeline underneath or along the bottom of Lake Pontchartrain. Broussard Brothers subcontracted with Defendant CCSI for pipe blasting and coating services on the portion of the pipe running in Lake Pontchartrain. CCSI employed Cypert as a pipeline coating technician to work on the pipeline project on the BB-70 in Lake Pontchartrain. (Rec. Doc. 56 at 2).

Cypert filed suit against Broussard Brothers and CCSI on February 25, 2013. (Rec. Doc. 1). Broussard Brothers filed an Answer to Cypert's Original and First Amended Complaint and

1

asserted a cross-claim against CCSI, asserting that there was a contract in effect between Broussard Brothers and CCSI to hold harmless and indemnify Broussard Brothers against claims like those asserted by Cypert. (Rec. Doc. 37).

## II.     SUMMARY OF MOTION AND OPPOSITION

### A. Broussard Brother's Motion for Summary Judgment (Rec. Doc. 50)

Broussard Brothers filed the present Motion for Summary Judgment on April 11, 2014, but the Court continued the motion after the parties agreed that the Court needed to resolve the Plaintiff's seaman status prior to the determination of this motion. (Rec. Doc. 52). On August 25, 2014, the Court denied CCSI's Motion for Summary Judgment and determined that Cypert was a seaman. (Rec. Doc. 77).

Broussard Brothers argues that summary judgment is appropriate because the contract between CCSI and Broussard Brothers requires CCSI to indemnify and defend Broussard Brothers for Cypert's claim against Broussard Brothers. Broussard Brothers avers that on May 29, 2012 Donna Ellis with CCSI provided a written Proposal ("Proposal") to Broussard Brothers for pipe blasting and coating work in connection with the Kinder Morgan pipeline project. (Rec. Doc. 50-1 at 5). This Proposal included an attachment entitled "CCSI Commercial Coating Services International, LLC Standard Terms and Conditions of Sale" ("T&C"). (Rec. Doc. 50-1 at 5). The T&C included an indemnity agreement, which provides:

> CCSI agrees to release, defend, indemnify, and hold harmless Customer from and against any and all claim, damages, losses and expenses directly or indirectly arising out of or related to bodily injury or death of CCSI's employees…arising out of, or related to, the performance or subject matter of this Contract….

(Rec. Doc. 50-1 at 6). In July 2012, Kenneth Choate, Vice President of Broussard Brothers, and Ron Raphoon, CCSI's General Manager, exchanged email correspondence, and on July 21,

2012, Broussard Brothers claims that Choate accepted the Proposal and told Raphoon and Bryan Karasek of CCSI that "[a]s a subcontractor, [CCSI] will need to execute a 'project specific' service agreement. This agreement addresses the liabilities and obligations taken on by our company, [Broussard Brothers] and its subcontractors." (Rec. Doc. 50-1 at 7).

Broussard Brothers claims that following this correspondence, Choate attached an Agreement ("Broussard Contract") that required CCSI to indemnify and defend Broussard Brothers in connection with any claims asserted by CCSI employees related to work on the project.[1] Choate and Raphoon exchanged several amended versions of the Broussard Contract, and Broussard Brothers contends that the parties agreed on the final edits in August 2012 and that Choate promised Raphoon a clean copy of the Broussard Contract for his execution. (Rec. Doc. 50-1 at 8). Broussard Brothers notes that the parties signed the final version of the Agreement in November 2012. (Rec. Doc. 50-1 at 8). CCSI began work for Broussard Brothers in August 2012 on the Kinder Morgan pipeline, and Cypert claims he was injured on September 23, 2012. (Rec. Doc. 50-1 at 8-9).

Broussard Brothers argues that Choate accepted CCSI's Proposal and its T&C when Broussard Brothers chose CCSI as a subcontractor in July 2012. (Rec. Doc. 50-1 at 13). Broussard Brothers argues that the Fifth Circuit has "held that notice and acceptance by an authorized representative of a party triggers the indemnity terms of a proposal, work order, or quote." (Rec. Doc. 50-1) (citing *Houston Exploration Co. v. Halliburton Energy Servs., Inc.*, 359 F.3d 777, 781 (5th Cir. 2004); *Employer Reinsurance Corp. v. Tetra Pak*, 2002 WL

---

[1] Although Broussard Brothers claims the Broussard Contract contained indemnification terms that would indemnify Broussard Brothers against CCSI employees' claims alleging Broussard Brothers' negligence, CCSI's Opposition and Broussard Brothers' Reply acknowledges that it does not.

3

32711300 (M.D. La. 2002)). Moreover, Broussard Brothers asserts that "[t]he intent to indemnify Broussard Brothers on this job was consistent throughout the work, even though the formal agreement was not signed until after Cypert's Accident." (Rec. Doc. 50-1 at 15). Broussard Brothers points to the fact that Choate and Raphoon exchanged correspondence and versions of the agreement in July 2012, and CCSI's intent to indemnify endured throughout these exchanges, culminating in the final agreement that the parties executed on November 28, 2012. (Rec. Doc. 50-1 at 15).

### B. CCSI's Opposition (Rec. Doc. 78)

CCSI filed an Opposition to the Motion for Summary Judgment, arguing that there is dispute over material facts. CCSI does not dispute that CCSI sent a proposal to Broussard Brothers that included an indemnity and defense provision on May 29, 2012. (Rec. Doc. 78 at 3). CCSI argues that when Choate sent Karasek of CCSI an email stating that Broussard Brothers had chosen CCSI as its subcontractor in the Kinder Morgan project, Choate never declared that he accepted the terms and conditions of the CCSI proposal. (Rec. Doc. 78 at 3). Rather, CCSI contends that when Choate stated CCSI would need to execute a "project service" service agreement, and this constituted a counter-offer as "Broussard [Brothers] required that CCSI sign the Broussard Contract if CCSI wanted the job." (Rec. Doc. 78 at 13-14). CCSI argues that this would signify a counter-offer under both Maritime and Louisiana law. (Rec. Doc. 78 at 14). CCSI contends that Paragraph 23 of the Broussard Contract further supports this contention, as it states: "This Agreement supersedes any and all other agreements, either oral or in writing, between the Parties with respect to the subject matter thereof and contains all of the covenants and agreements between the Parties with respect to the subject matter…." (Rec. Doc. 78 at 15). CCSI notes that when Choate emailed the final version of the Broussard Contract on

November 27, 2012, he stated that "it was this contract 'that should have been in place prior to CCSI's commencement of the work for us on the Kinder Morgan project.'" (Rec. Doc. 78 at 14).

If the Court finds that a contract existed at the time of Cypert's injury, CCSI maintains that the Broussard Contract constitutes the only applicable contract. (Rec. Doc. 50 at 11). CCSI argues that the Broussard Contract indemnity language differs significantly from the CCSI Proposal, as it only requires CCSI to defend and indemnify Broussard Brothers to the extent that the acts or omissions of CCSI caused the personal injury to a CCSI employee and does not provide for indemnification of injuries caused by Broussard Brothers' own acts of negligence or by the unseaworthiness of a Broussard Brothers' vessel. (Rec. Doc. 78 at 5). Accordingly, CCSI asserts that since Broussard's negligence allegedly caused Cypert's injury, CCSI is not required to indemnify and defend Broussard under the Broussard Contract. (Rec. Doc. 78 at 7). CCSI emphasizes that Broussard Brothers was mistaken in its Motion for Summary Judgment memorandum when it represented that both the Proposal and the Broussard Contract contained the same indemnity language. (Rec. Doc. 78 at 7).

While CCSI maintains that no contract was in place, and Maritime Law therefore applies, CCSI argues that if the Court finds that the Broussard Contract took effect prior to the injury then Louisiana Law would apply. (Rec. Doc. 78 at 16). CCSI avers that the parties intended to enter a written contract, and pursuant to Louisiana Law, when parties agree that a final contract will be reduced to writing, there is no governing contract until the agreement is reduced to writing. (Rec. Doc. 78 at 16) (citing La Civ. Cod art. 1947; *Rogers v. Brooks*, 122 Fed. Appx. 729, 2004 WL 2977453 (5th Cir, 2004)). The absence of a contract at the time of Cypert's accident, CCSI contends, signifies that "the parties' liabilities for Cypert's injuries were 'at

5

law.'" (Rec. Doc. 78 at 16). Finally, CCSI argues that even if the Broussard Contract includes an indemnity provision, LA. R.S. § 7.2780.1 would invalidate such a provision because the Broussard Contract is a construction contract. (Rec. Doc. 78 at 17).

### C. Broussard Brothers' Reply (Rec. Doc. 87)

Broussard Brothers filed a Reply to CCSI's Opposition on September 11, 2014. (Rec. Doc. 87). In response to CCSI's argument that Broussard Brothers never accepted the CCSI Proposal, and instead responded with a counter-offer, Broussard Brother asserts that "if the discussions related to a subcontract were truly a 'counter-offer' CCSI would not have performed and had been paid for the pipe coating services." (Rec. Doc. 87 at 2). Rather, Broussard Brothers insists it would have required a subcontract to be in place prior to the initiation of CCSI's work. (Rec. Doc. 87 at 2-3). Broussard Brothers states that "[t]he electronic correspondence between Choate and Raphoon…clearly evidences that Broussard Brothers accepted CCSI's Proposal for the work on the Lake Pontchatrain project and that the work had been commenced by CCSI pursuant to the Proposal. (Rec. Doc. 87 at 3).

### III. LAW & ANALYSIS

#### A. Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.*

When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

  B.  **Contract between Broussard Brothers and CCSI**

The determination of this motion rests on an analysis of the parties' contract formation. While it is not apparent whether Maritime or Louisiana Law applies in the instant case, that determination has no bearing on the analysis as both apply general contract principles. Under both Maritime and Louisiana Law, a valid contract requires an offer and an acceptance. *See* La. Civ. Code art. 1927; *Nat'l Marine, Inc. v. Glencore, Ltd.*, CIV. A. 95-2682, 1998 WL 118087 at *3 (E.D. La. Mar. 16, 1998). Under Louisiana Law, "an acceptance not in accordance with the terms of the offer is deemed to be a counteroffer" (La. Civ. Code art. 1943), and the determination of the existence of a contract is a finding of fact pursuant to Louisiana Law. *SnoWizard, Inc. v. Robinson*, 897 F. Supp. 2d 472, 480 (E.D. La. 2012).

Maritime contracts are subject to the general rules of contract law. *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986); *Otto Candies, Inc. v. McDermott Int'l Inc.*, 600 F. Supp. 1334, 1339 (E.D. La. 1985); *Fitch Marine Transp., LLC v. Am. Commercial Lines, LLC*, CIV.A.09-4450, 2010 WL 2523062 at *4 (E.D. La. June 14, 2010). Courts apply federal common law to contracts governed by Maritime Law. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 (5th Cir. 1991). As CCSI notes in their Opposition, the courts

look to the Restatement (Second) of Contracts when they apply federal common law to maritime contracts. *Marine Overseas Servs., Inc. v. Crossocean Shipping Co.*, 791 F.2d 1227, 1234 (5th Cir. 1986); *E.N. Bisso & Son Inc. v. World Marine Transport & Salvage Inc.*, CIV. A. No. 94-0690, 1996 WL 28520 at *3 (E.D. La. Jan. 23, 1996).

The Second Restatement defines acceptance as follows:

(1) Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.
(2) Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise.
(3) Acceptance by a promise requires that the offeree complete every act essential to the making of the promise.

Restatement (Second) of Contracts § 50. A counteroffer is defined as follows:

(1) A counter-offer is an offer made by an offeree to his offeror relating to the same matter as the original offer and proposing a substituted bargain differing from that proposed by the original offer.
(2) An offeree's power of acceptance is terminated by his making of a counter-offer, unless the offeror has manifested a contrary intention or unless the counter-offer manifests a contrary intention of the offeree.
Offer, Counteroffer

Restatement (Second) of Contracts § 39.

Based on the facts, it is not clear whether Choate's July 21, 2012 email to CCSI constituted an acceptance or a counter-offer. (Rec. Doc. 50-2 at 10). The email states that Broussard Brothers had selected CCSI as its subcontractor, but the language "you will need to execute a 'project specific' service agreement" is ambiguous as to whether that email signified an acceptance of CCSI's proposal or whether Choate issued a counter-offer to CCSI with Broussard Brothers' own contract terms and conditions. (Rec. Doc. 50-2 at 10). Broussard Brothers contends that the notion that they rejected the Proposal and asserted a counter-offer is "unsubstantiated, disputed by Mr. Choate and contrary to the actions of the parties." (Rec. Doc.

87 at 3). But CCSI outlines a compelling argument that the Broussard Contract constituted a counter-offer as it differed from the CCSI proposal, and Broussard Brothers had stressed that CCSI's work was contingent on their acceptance of the Broussard Contract. Indeed, the central dispute in this motion is over the differing indemnification terms of the two contracts, so it is not "unsubstantiated" that the Broussard Contract could be determined a counter-offer because it differed significantly from the original Proposal. Moreover, Choate acknowledged in a November 2012 email that the Broussard Contract should have been in place prior to CCSI's commencement of work, indicating that it may have been Broussard Brother's intention to issue a counteroffer and *not* accept the Proposal.

Alternatively, Broussard Brothers argues that the email constituted an acceptance and that "[t]he law is settled that an agreement between the parties constitutes a contract and binds those parties at once, although they may have agreed that they would thereafter execute a formal instrument." (Rec. Doc. 87 at 3). Broussard Brothers cites *Newport Ltd v. Sears Roebuck & Co*, a Fifth Circuit case, to support this proposition. In that case, the Fifth Circuit notes that whether a contract existed upon the execution of a preliminary agreement or did not come to fruition until the later, formalized agreement depends on the intention of the parties. *Newport Ltd v. Sears Roebuck & Co*, 6 F.3d 1058, 1065 (5th Cir. 1993). The Fifth Circuit averred that "[t]he parties' intent is a question of fact" and ultimately reversed the district court's decision to grant summary judgment because there were genuine issues of material fact. *Id.* Similarly, based upon the email correspondence; the affidavits; the parties' course of conduct; and the contracts' themselves, there is a genuine issue of fact as to Broussard Brothers' intent and whether the company accepted the CCSI proposal as a preliminary agreement or responded with a counter-offer. Accordingly, summary judgment is not appropriate at this time.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Broussard Brother's Motion for Summary Judgment (Rec. Doc. 50) is hereby **DENIED.**

New Orleans, Louisiana, this 26th day of September.

_____
UNITED STATES DISTRICT JUDGE